UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VERTRUE INCORPORATED, | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | Civil No.  3:05cv1809 (PCD) |
| | : | |
| ALEXANDER B. MESHKIN, | : | |
| Defendant. | : | |

## RULING ON DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Plaintiff has filed, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, two

motions for protective orders, seeking an order prohibiting Defendant Alexander B. Meshkin

from deposing Maurice Musilli, Dennis Fridrich, James Duffey, L. Tracy Scarfi, Douglas Weiss,

Carl Peru, or any other witnesses concerning details of Plaintiff's FastTrack Savings program,

which Plaintiff argues are "neither relevant to the claims before this Court nor reasonably likely

to lead to the discovery of admissible evidence." (Pl.'s Mot. Prot. Order 1.)[1]  Defendant argues

that the depositions are "clearly relevant and will lead to the discovery of relevant and admissible

information." (Def.'s Mem. Opp. Mot. Prot. Order 1.)  For the reasons set forth herein, Plaintiff's

Motions for Protective Orders [Doc. Nos. 71, 80] are **denied**.

## I.    BACKGROUND

The instant action is the third of five separate proceedings related to a dispute between

---

[1]     Plaintiff's first Motion for a Protective Order [Doc. No. 71] only seeks to prohibit Defendant from
deposing Carl Peru, however, Plaintiff's second Motion for a Protective Order [Doc. No. 80]
applies to Mr. Peru, the other employees listed, and "any other witnesses," as laid out above.
Because the second motion includes and expands upon the first, the second motion will be the one
referred to here.

Meshkin and his companies on the one hand and Vertrue on the other.[2]  The facts relevant to this

particular action were discussed at length in this Court's Ruling on Defendant's Motion to

Dismiss [Doc. No. 52], familiarity with which is assumed. See Vertrue Inc. v. Meshkin, No.

3:05cv1809 (PCD), 2006 U.S. Dist. LEXIS 24844, at *1-13 (D. Conn. Apr. 27, 2006).  For that

reason, only those facts necessary to the resolution of this motion will be laid out here.

Defendant is the Chief Executive Officer, principal owner, principal shareholder and

director of Nutzz.com, LLC ("Nutzz") and its parent company, Bang Racing, LLC ("Bang

Racing") (collectively, the "Companies"). (Compl. ¶ 3.)  Plaintiff's claims in this action are

against Defendant in his individual capacity and allege that Defendant, acting as the "alter ego"

of the Companies, made certain fraudulent misrepresentations to Plaintiff which induced Plaintiff

to enter into an agreement with Nutzz.com (the "Agreement") to develop the online Nutzz Elite

Program. (Id. ¶ 1.)  Plaintiff contends that Defendant's failure to respect the corporate form of the

Companies justifies piercing the corporate veil and holding him personally liable for the

liabilities of both entities, including a $1.25 million advance that Plaintiff provided to Nutzz.com

in order to fund its advertising and promotional obligations. (Id.)

Nutzz.com, represented by the same counsel who represents Defendant in this action,

filed a Demand for Arbitration with the American Arbitration Association ("AAA") on August 4,

---

[2]      A lawsuit filed in the Chancery Court in and for New Castle County, Delaware (the "Delaware
Lawsuit") was the first action.  Subsequently, on August 4, 2005, Nutzz.com initiated an
arbitration proceeding pursuant to Section 13 of the Agreement between Memberworks
Incorporated (Vertrue's predecessor company) and Nutzz.com.  The instant action was initiated in
this Court on November 28, 2005, with the filing of a Notice of Removal pursuant to 28 U.S.C. §
1441(b).  The fourth action is a Bill of Discovery brought pursuant to Practice Book § 13-9
(Docket No. FST-CV-05-400688-S).  The fifth and final action, filed in Delaware Chancery Court,
is a petition to appoint a receiver to oversee Nutzz.com and Bang Racing, Vertrue Inc. v.
Nutzz.com, LLC and Bang Racing, LLC, C.A. No. 1719-N.

2005, which it amended on May 12, 2006 (the "Arbitration Proceeding").[3] (See Exhs. A & B to

Pl.'s Mem. Supp. Mot. Prot. Order.)  The Demand for Arbitration articulates a number of claims

arising out of Plaintiff and the Companies' agreement to establish an online savings program

known as Nutzz Elite, and includes allegations that Plaintiff breached the agreement, violated

Connecticut and Delaware statutes addressing unfair trade practices, and misappropriated trade

secret information.  Moreover, several of the claims relate to Plaintiff's termination of the Nutzz

Elite Program and pursuit of an individual program called the FastTrack Savings Program

("FastTrack") ("the Exclusivity Claims"). (Id.)  During a preliminary hearing with the AAA's

three-Arbitrator panel (the "Panel") on April 26, 2006, Nutzz.com requested permission to take

depositions as part of its discovery in the Arbitration Proceeding. (See Exh. C to Pl.'s Mem.

Supp. Mot. Prot. Order.)  As is typical in arbitration proceedings, the Panel denied Nutzz.com's

request.

On May 31, 2006, Defendant noticed the deposition of Vertrue employee Maurice Musilli

("Musilli"), compelling his attendance and testimony on June 5, 2006 in Stamford, Connecticut.

(See Exh. D to Pl.'s Mem. Supp. Mot. Prot. Order.)  During the deposition, Defendant's attorney

obtained testimony from Musilli concerning the parties' respective performance of their

Agreement.  According to Plaintiff, Defendant's attorney then sought to question Musilli about

the details of Plaintiff's FastTrack Savings Program. (Musilli Dep. 34:10-87:10, Supp. Exh. to

Pl.'s Mem. Supp. Mot. Prot. Order.)  Plaintiff's attorney objected to all questions concerning the

FastTrack Savings Program. (Id.)

---

[3]     Section 13 of the Agreement requires arbitration of any disputes arising out of it, with the
exception of claims arising under Section 12 of the Agreement, the Confidentiality Clause. (See
Agreement § 13, Exh. A to Compl.)

I.      **DISCUSSION**

A.      **Standard**

The scope of discovery under Rule 26(b) of the Federal Rules of Civil Procedure is very

broad, "encompassing any matter that bears on, or that reasonably could lead to other matter that

could bear on, any issue that is or may be in the case." Maresco v. Evans Chemetics, Div. of

W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992) (quoting Oppenheimer Fund, Inc. v.

Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978)).  "Parties may obtain

discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

party . . . Relevant information need not be admissible at the trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

In the Second Circuit, "this obviously broad rule is liberally construed." Daval Steel Products,

Div. of Francosteel Corp. v. M/V Fakredine, 951 F. 2d 1357, 1367 (2d Cir. 1991) (citing

Oppenheimer, 427 U.S. at 351); see also Lamoureux v. Genesis Pharm. Servs., 226 F.R.D. 154,

158 (D. Conn 2004).  The Supreme Court has held that "discovery is not limited to issues raised

by the pleadings, for discovery itself is designed to help define and clarify the issues," nor is it

"limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation

that are not related to the merits." Oppenheimer, 427 U.S. at 351; but see In re Fontaine, 402 F.

Supp. 1219, 1221 (E.D.N.Y. 1975) ("While the standard of relevancy is a liberal one, it is not so

liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which

does not presently appear germane on the theory that it might conceivably become so.'") (citation

omitted).

The scope of discovery, however, is not without bounds, and limitations are imposed

4

where the discovery is "unreasonably cumulative or duplicative," overly "burdensome . . . [or]

expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(2); see also Oppenheimer, 427 U.S. at 351-52 (holding that "discovery, like

all matters of procedure, has ultimate and necessary boundaries") (citations omitted).  A party

seeking discovery has the initial burden such that "some threshold showing of relevance must be

made before parties are required to open wide the doors of discovery and to produce a variety of

information which does not reasonably bear upon the issues in the case."  Rubin v. Hirschfeld,

No. 3:00cv1657, 2002 U.S. Dist. LEXIS 26798, at *3, 8 (D. Conn. Feb. 12, 2002) (quoting Hofer

v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992), also citing Sprout-Bauer, Inc. v. Beazer

East, Inc., 174 F.R.D. 609, 631 (M.D. Pa. 1997)); see also Oppenheimer, 427 U.S. at 352

(holding that "it is proper to deny discovery of matter that is relevant only to claims or defenses

that have been stricken, or to events that occurred before an applicable limitations period, unless

the information sought is otherwise relevant to issues in the case").

B.     Relevance of Deposition Testimony Concerning FastTrack

At issue here is defense counsel's attempt to question Plaintiff's employees about the

details and operations of the FastTrack Savings Program.  According to Plaintiff, FastTrack was

created only after "Nutzz.com[] proved incapable of performing its obligations under the

Agreement." (Pl.'s Mem. Supp. Mot. Prot. Order 5.)  Plaintiff contends that it created FastTrack

in order to provide "some benefits" to the individuals who had signed up for the Nutzz Elite

Program, rather than "completely abandoning" them. (Id.)  Plaintiff maintains that FastTrack did

not exist at the time of the alleged fraudulent misrepresentations nor during the term of the

Agreement, and therefore, because the details and operation of the FastTrack Savings Program

5

post-date the actions and omissions giving rise to Plaintiff's claims in this action, Plaintiff argues

that they are not relevant to the claims before this Court. (Id.)  Plaintiff contends that the details

of the FastTrack Savings Program relate only to Nutzz.com's Exclusivity Claims that have been

presented before the AAA for resolution.  Plaintiff argues that Nutzz.com did not seek deposition

testimony regarding FastTrack until after it was prohibited from taking depositions in the

arbitration proceeding, indicating that Defendant and his counsel "are engaged in a clear effort to

circumvent the Panel's ruling and obtain depositions concerning Nutzz.com's Exclusivity

Claims." (Id. 6.)

Defendant, however, argues that in creating FastTrack, Plaintiff "simply copied

Meshkin's business plan, client list, and all other aspects of Nutzz.com's program, renamed it

FastTrack and resold it to the same potential customer base." (Def.'s Mem. Opp. Mot. Prot.

Order 2 (comparing Nutzz.com flyer, Exh. B to Def.'s Mem. Opp., with FastTrack flyer, Exh. C

to Def.'s Mem. Opp.).)[4]  Moreover, Defendant contends that Plaintiff's efforts to "steal"

Defendant's program began prior to its termination of the Agreement with Nutzz.com. (Id.)

Defendant argues that details surrounding the FastTrack Savings Program are relevant to

this action for several reasons.  First, Defendant contends that because Plaintiff "stole" the

Nutzz.com business plan and created an identical program, development of facts surrounding the

FastTrack program is relevant to the issue of why the Agreement ultimately failed.  Defendant

also argues that Plaintiff's decision to continue the program it started with Nutzz.com bears on

Plaintiff's claim for damages and its duty to mitigate, asserting that it is entitled to information

---

[4]      The FastTrack flyer is essentially identical in terms of both style and content to the Nutzz.com
         flyer. (See Nutzz.com flyer, Exh. B; FastTrack flyer, Exh. C.).

about FastTrack in order to establish what effect, if any, it has on Plaintiff's claimed damages

and lost profits. (See Def.'s Mem. Opp. Mot. Prot. Order 2.)  Finally, Defendant argues that

Plaintiff's conduct and the effects thereof is relevant to issues of liability, causation, and damages

with regard to Plaintiff's tort claims for civil theft, conversion, and unjust enrichment and its

statutory claim. (Id.)

　　　"In deciding whether a request comes within the discovery rules, a court is not required to

blind itself to the purpose for which a party seeks information. Thus, when the purpose of a

discovery request is to gather information for use in proceedings other than the pending suit,

discovery properly is denied." Oppenheimer, 427 U.S. at 353 (citing Mississippi Power Co. v.

Peabody Coal Co., 69 F.R.D. 558, 565-68 (S.D. Miss. 1976); Econo-Car Int'l, Inc. v. Antilles

Car Rentals, Inc., 61 F.R.D. 8, 10 (D.V.I. 1973), rev'd on other grounds, 499 F.2d 1391 (3d Cir.

1974)); see also 6 James Wm. Moore, et al., Moore's Federal Practice § 26.41[6][c] (3d ed.

2002) (noting that "whether a specific discovery request seeks information relevant to a claim or

defense will turn on the specific circumstances of the pending action. . . .").  Numerous courts

have prohibited discovery on the merits in a case prior to arbitration, reasoning that it is

inconsistent with arbitration's goals of avoiding expensive and protracted litigation. See 74

HARV. L. REV. 940, 943 (1961); see also Mississippi Power Co., 69 F.R.D. at 565-68;

Econo-Car Int'l, Inc., 61 F.R.D. at 10.  In these cases, however, discovery has been completely

*stayed* pending the close of arbitration on issues identical to those presented in the litigation.

　　　In the present action, however, this Court has already declined to stay discovery and has

found that the issues being arbitrated are distinguishable.  Specifically, this Court held, based in

part on Plaintiff's arguments against the imposition of a stay, that because Defendant, in his

personal capacity, is not bound by the decision in the arbitration proceeding, "there is no value to be served by staying the litigation." Vertrue, Inc. v. Meshkin, No. 3:05cv1809 (PCD), 2006 U.S. Dist. LEXIS 24844, at *72 (D. Conn. Apr. 27, 2006).  The Court ruled against a stay even though the two proceedings were based on essentially the same facts, because Plaintiff could not obtain an adjudication against Defendant in the arbitration proceeding.  Id.  Accordingly, in order to aid Plaintiff in bringing the matter to fruition, this Court has permitting discovery to proceed in this action. Moreover, this Court also held, in granting Plaintiff's motion to compel the production of certain documents, that Plaintiff was entitled to documents despite the fact that the Panel in the arbitration proceeding had already sustained Defendant's objections to identical requests. (See 5-10-06 Ruling on Emergency Mot. Compel [Doc. No. 62].)

Based in part on these prior rulings, as well on the present finding that information related to the FastTrack Savings Program is relevant to the claims presented and potential damages in this action, this Court holds that Defendant is entitled to question Plaintiff's employees, including, but not limited to Maurice Musilli, Dennis Fridrich, James Duffey, L. Tracy Scarfi, Douglas Weiss, and Carl Peru, concerning details of Plaintiff's FastTrack Savings program. See Cox v. McClellan, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) (emphasizing that discovery is permissible when there is any possibility of relevance to subject matter of action); United States v. Int'l Bus. Machs. Corp., 66 F.R.D. 215, 218 (S.D.N.Y. 1974) ("This court has emphasized that discovery is to be considered relevant when there is *any possibility* that the information sought may be relevant to the subject matter of the action") (emphasis in original).

II.     CONCLUSION

In accordance with the foregoing reasons, Plaintiff's Motions for Protective Orders [Doc.

Nos. 71, 80] are **denied**.  The depositions shall proceed as scheduled.

       SO ORDERED.

Dated at New Haven, Connecticut, June  _8_ , 2006.


_/s/_
Peter C. Dorsey, U.S. District Judge
District of Connecticut
