UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERTRUE INCORPORATED, : | |
|     Plaintiff, : | |
| : | |
|     -vs- : | Civil No.  3:05cv1809 (PCD) |
| : | |
| ALEXANDER B. MESHKIN, : | |
|     Defendant. : | |

### RULING ON MARYANN AND SHAHRAM MESHKIN'S MOTION FOR A PROTECTIVE ORDER

Non-parties Mary Ann and Shahram Meshkin (the "Meshkins") move, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, for a protective order addressed to the subpoena Plaintiff served on Wachovia Bank NA ("Wachovia") on or about May 2, 2006.[1] The Meshkins seek an order prohibiting the production of and inquiry into any and all documents or information in Wachovia's possession that relate to the Meshkin personal accounts or other financial records. For the reasons stated herein, the Meshkin's Motion for a Protective Order [Doc. No. 96] is **denied**.

**I.   BACKGROUND**

There have been a large number of motions and rulings filed in this case and accordingly, it is assumed that the parties are familiar with the procedural history. For purposes of this motion, the relevant background is as follows:  The Meshkins are the parents of Defendant, Alexander B. Meshkin.  Mary Ann Meshkin is the owner of One Angel Enterprises LLC ("One

---

[1] The subpoena was initially addressed to Southtrust Bank ("Southtrust").  Southtrust merged with Wachovia in November 2004.  According to the Meshkins, a second version of the subpoena with a corrected address was forwarded to Wachovia a week after the initial subpoena, however, defense counsel never received the corrected second subpoena. (See Non-parties' Mot. Prot. Order 1 n.1 (citing Exhs. A & B to Mot. Prot. Order).)

Angel"). (Pl.'s Opp. 2 (citing Mary Ann Meshkin Dep. 157:6-159:1, Exh. A to Pl.'s Opp.).) According to Plaintiff, Ms. Meshkin formed One Angel at Defendant's behest. (Id.)

Melissa Colley is the former office manager of Bang Racing, and in that capacity, had access to the financial books and records of Bang Racing and affiliated entities. (Id. (citing Tousi Dep. 251:17-252:8, Exh. B to Pl.'s Opp.).) On March 10, 2004, Ms. Meshkin sent an email to Ms. Colley requesting that she open an account for One Angel at Southtrust Bank (the "One Angel Account"), and requested that Defendant be added as a signer on that account. (See Mary Ann Meshkin and Colley email, Exh. C to Pl.'s Opp.)  The Meshkins assert that they "have never maintained an account with Southtrust." (Non-parties' Mot. Prot. Order 3.)  Over the six months following the establishment of the One Angel Account, Defendant had Ms. Colley move large sums of money, ranging from $3,000 to $5,000, from Bang Racing's accounts into the One Angel Account. (See Def.'s emails, Exh. D to Pl.'s Opp.)

In addition to owning One Angel, Mary Ann Meshkin is also a ten-percent owner of KeyAge Ventures, a holding company of which Defendant owns the remaining ninety percent. (See Meshkin Dep. 65:2-12, Exh. E to Pl.'s Opp.)  During the period covered by the emails included in Plaintiff's Exhibit D, Defendant had Ms. Colley move several large sums—$12,000 each time—to KeyAge Ventures. (See Exh. D.)

Plaintiff took the deposition of John Adalio, former Vice President of Sponsorship for Bang Racing, on May 15, 2006.  The transcript of that deposition, which is not yet available, contains statements from Adalio asserting that Defendant caused sums of money to be transferred to Mary Ann Meshkin for several months after the Bang Racing employees, including Adalio, were no longer being paid. (See Pl.'s Opp. 3.)

On April 13, 2006, Plaintiff issued a subpoena to Wachovia requesting the production of documents related to Defendant, Nutzz.com, LLC, Bang Racing, LLC, and affiliated entities. (See Subpoena, Request Nos. 2, 3, 8-10, 17, Exh. A to Mot. Prot. Order.)  The subpoena also seeks documents relating to Mary Ann Meshkin's financial records, specifically requesting:

> Request No. 8: All documents constituting, concerning, or referring to Mary Ann Meshkin's financial records, including, but not limited to, income statements, profit and loss statements, balance sheets, revenue data, expense data, cash flow reports, results from operations, budgets, forecasts, business plans, tax returns, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations, budgets, forecasts, business plans, tax returns, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.
>
> Request No. 9: All documents that identify each bank account owned or held directly or indirectly, in the name of . . . Mary Ann Meshkin.
>
> Request No. 10: All documents identifying, constituting, or referring to any transaction in each bank account referred to in Request No. 9, between January 1, 2000 and the present including, but not limited to, all statements of activity in each such account and all other documents identifying or referring to each deposit, withdrawal, transfer, or other payment (whether electronic or otherwise) into or out of each such account and all documents created, obtained, or maintained in connection with each such transaction.

(Id.) Plaintiff asserts that on April 28, 2006, it gave notice to Defendant's counsel that Plaintiff was going to subpoena certain financial records in the possession of Southtrust Bank, which documents were due to be returned by May 17, 2006. (See Pl.'s Opp. 3.)  On May 3, 2006, Wachovia mailed a letter to Mary Ann Meshkin alerting her to the issuance of the subpoena. (See Exh. B to Mot. Prot. Order.)

## II.    STANDARD OF REVIEW

The scope of discovery under Rule 26(b) of the Federal Rules of Civil Procedure is very broad, "encompassing any matter that bears on, or that reasonably could lead to other matter that

could bear on, any issue that is or may be in the case." Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978)). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In the Second Circuit, "this obviously broad rule is liberally construed." Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine, 951 F. 2d 1357, 1367 (2d Cir. 1991) (citing Oppenheimer, 427 U.S. at 351); see also Lamoureux v. Genesis Pharm. Servs., 226 F.R.D. 154, 158 (D. Conn 2004). The Supreme Court has held that "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues," nor is it "limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." Oppenheimer, 427 U.S. at 351; but see In re Fontaine, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'") (citation omitted).

    The scope of discovery is not without bounds, and limitations are imposed where the discovery is "unreasonably cumulative or duplicative," overly "burdensome . . . [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2); see also Oppenheimer, 427 U.S. at 351-52 (holding that "discovery, like all matters of procedure, has ultimate and necessary boundaries") (citations omitted). A party seeking

discovery has the initial burden such that "some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Rubin v. Hirschfeld, No. 3:00cv1657, 2002 U.S. Dist. LEXIS 26798, at *3, 8 (D. Conn. Feb. 12, 2002) (citations omitted).

A court may enter a protective order pursuant to Rule 26(c) "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  When, however, the requested discovery is relevant to the action, a party seeking a protective order bears the burden of showing "good cause." Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992); Fed. R. Civ. P. 26(c).

### III.   DISCUSSION

Plaintiff asserts that it served the subpoena in an attempt to establish Defendant's use of the Meshkin's accounts to move, hide, and otherwise process asserts belonging to Defendant, any of Defendant's corporate entities, and affiliates, and/or Plaintiff for the purposes of (1) establishing Defendant's complicity in any and all of the wrongful acts described in the Complaint by establishing, among other things, fraudulent intent, and (2) preventing the continuing dilution and concealment of assets within Defendant's custody or control in order to preserve Plaintiff's recovery. (See Pl.'s Opp. 1.)

The evidence submitted by Plaintiff indicates that Defendant directed his mother, Mary Ann Meshkin, to form an LLC, One Angel, and subsequently transferred some amount of funds to that account.  The evidence also shows that Defendant retained at least some degree of control over the funds, as he was named as an additional signer on the account.  Moreover, according to

5

Plaintiff, the testimony of Mr. Adalio will establish that Defendant continued to direct the transfer of funds to the One Angel Account after Bang Racing stopped paying employee salaries. Plaintiff is attempting to subpoena the bank records to show that Defendant used his family's bank accounts to make extraordinary transfers from accounts owned by his business entities and thus used his family to "process assets." (Pl.'s Opp. 4.)  Such a showing would help Plaintiff establish Defendant's fraudulent intent.

In contrast to Plaintiff's detailed showing of relevance, the Meshkins do not establish good cause for the issuance of a protective order.  The Meshkins assert only that the documents at issue are "in no manner relevant" and that the requests are solely for the purpose of "annoying, harassing, and embarrassing" the Meshkins.  Without a further showing of harm, and in light of the relevance of the subpoenaed information to the instant action, this Court cannot find good cause for the issuance of the protective order.

## IV.     CONCLUSION

For the foregoing reasons, the Meshkin's Motion for a Protective Order [Doc. No. 96] is **denied**.

SO ORDERED.

Dated at New Haven, Connecticut, July  27 , 2006.

/s/
Peter C. Dorsey, U.S. District Judge
District of Connecticut