# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

VERTRUE INCORPORATED,        :
      Plaintiff,             :
                               :
          -vs-               :     Civil No.  3:05cv1809 (PCD)
                               :
ALEXANDER B. MESHKIN,       :
      Defendant.           :

## RULING ON PLAINTIFF'S MOTION FOR MONETARY SANCTIONS AND RECORD OF DEFENDANT'S INCOMPLETE COMPLIANCE WITH THE COURT'S JUNE 12, 2006 ORDER

Plaintiff moves, pursuant to the Court's June 19, 2006 Order, for an order seeking sanctions in the form of costs to be imposed against Defendant and his counsel.  For the reasons stated herein, Plaintiff's Motion [Doc. No. 102] is **granted in part**.

## I.    BACKGROUND

The instant action is the third of five separate proceedings.[1]  The facts relevant to this action were discussed at length in this Court's Ruling on Defendant's Motion to Dismiss, see Vertrue Inc. v. Meshkin, No. 3:05cv1809 (PCD), 2006 U.S. Dist. LEXIS 24844, at *1-13 (D. Conn. Apr. 27, 2006), and accordingly, only those facts relevant to this motion will be discussed here.

The parties in this action have involved this Court in a number of discovery disputes, with

---

[1]    A lawsuit filed in the Chancery Court in and for New Castle County, Delaware (the "Delaware Lawsuit") was the first action.  Subsequently, on August 4, 2005, Nutzz.com initiated an arbitration proceeding pursuant to Section 13 of the Agreement between Memberworks Incorporated (Vertrue's predecessor company) and Nutzz.com.  The instant action was initiated in this Court on November 28, 2005, with the filing of a Notice of Removal pursuant to 28 U.S.C. § 1441(b).  The fourth action is a Bill of Discovery brought pursuant to Practice Book § 13-9 (Docket No. FST-CV-05-400688-S).  The fifth and final action, filed in Delaware Chancery Court, is a petition to appoint a receiver to oversee Nutzz.com and Bang Racing, Vertrue Inc. v. Nutzz.com, LLC and Bang Racing, LLC, C.A. No. 1719-N.

Plaintiff filing two motions to compel, two motions for a protective order, and three motions for sanctions, and Defendant filing four motions for a protective order and one motion to compel. As a result, there are a number of rulings and orders involved here.

A June 12, 2006 Order issued by this Court required Defendant to provide to Plaintiff the documents flagged in Plaintiff's June 12, 2006 Emergency Motion for Sanctions, and to file a Certification of Compliance with the Court on or before June 14, 2006. (June 12, 2006 Order, Doc. No. 89.)  Defendant, in compliance with the Order, filed a Certification of Compliance on June 14, 2006 (the "Certification").  Subsequently, on June 16, 2006, Plaintiff filed another Emergency Motion Seeking Sanctions, asserting that Defendant's failure to comply with this Court's May 10, 2006 and June 12, 2006 Orders warrants the imposition of sanctions.

A June 19, 2006 Order issued in response to Plaintiff's June 16 Emergency Motion provided, with respect to the required production by Bang Associates of "all QuickBooks accounting files and over 3200 pages of bank statements, balance sheets, ledger accounts and other materials," that if Plaintiff "creates a record which unquestionably refutes defendant's full compliance, by an independent source," by June 30, 2006, this Court will enter a default against Defendant. (June 19, 2006 Order at 1, Doc. No. 91.)  The Order also provided that "[i]f plaintiff can demonstrate that the foregoing noncompliance rendered defendant's deposition incomplete, on documentation of its costs and expenses related thereto, the court will entertain a motion for further sanctions in the form of costs." (Id. at 2.)  Therefore, two aspects of the Court's June 19, 2006 Order were prospective in nature: (1) if Defendant failed to provide sufficient document production by the time of his deposition, rendering his deposition incomplete, the Court would entertain a further motion for sanctions; and (2) with respect to Defendant's June 14, 2006

Certification, that "[i]f, before June 30, 2006, plaintiff creates a record which unquestionably refutes defendant's full compliance, by an independent source, a default will enter." (June 19, 2006 Order.)

With respect to (1), Defendant filed a Declaration on June 30, 2006 (the "Meshkin Declaration"), to which Plaintiff objected on July 21, 2006.  In an attempt to comply with the date set forth in the Order with regard to (2), Plaintiff filed the instant Motion for Sanctions on June 30, 2006.  Due to the date on which the documents were produced and the manner in which they were presented, however, Plaintiff asserts that its counsel "has not had sufficient opportunity to inventory the documents produced in order to allow it to respond to any claims that [Defendant] may make in response to the June 19, 2006 Order concerning what this most recent production contains." (Pl.'s Mem. Supp. Mot. Sanctions 3.)  Plaintiff did, however, provide more information about the documents produced in its Reply to Defendant's Opposition to the Motion for Sanctions, and in its Response and Supplemental Response to the Meshkin Declaration.

Plaintiff's Motion for Sanctions is premised on allegations that Defendant repeatedly, and in bad faith, worked to prevent Plaintiff from obtaining the documents necessary to prove its claims that Defendant defrauded Plaintiff out of $1.25 million. (See Pl.'s Mot. Sanctions.) Plaintiff cites, as the "most recent example" of Defendant's attempts to shirk discovery obligations, an instance of Defendant continuing his deposition which was originally scheduled for June 27, 2006. (See Pl.'s Mem. Supp. Mot. Sanctions 2.)  According to Plaintiff, Defendant's counsel contacted Plaintiff's counsel on June 26, the day before the deposition, to suggest that it be moved to June 30, because Defendant was going to produce hundreds or thousands of additional pages of "paper production" of responsive documents on June 27, in advance of the

3

deposition. (Id.)  Defendant's counsel offered to deliver the documents to Plaintiff's counsel's Wilmington, Delaware office that day or overnight them to another location, and offered Plaintiff's counsel access to two inoperable computers in Wilmington that Defendant's counsel said "may have documents on them." (Id.)  Based on these representations, Plaintiff's counsel agreed to reschedule the deposition, requested that the documents be sent overnight to Boston, and inquired about the inoperable computers. (Id.)  Defendant's counsel did not respond to Plaintiff's counsel's inquiry about the inoperable computers, and the documents failed to arrive the following day. (Id.)  Defendant's counsel then promised that the documents would be produced the next day, and agreed to make certain documents available electronically. (Id. at 2-3.)  No paper documents arrived on June 28, however, Plaintiff's counsel did receive seven compact disks of documents without Bates numbers. (Id. at 3.)  Because of the manner in which the documents were processed, Plaintiff asserts that they could not be viewed on a computer screen and had to be sent out to a vendor for printing.  As a result of Plaintiff's counsel's need to travel to North Carolina for Defendant's deposition, he asserts that he did not have a "meaningful opportunity" to review the documents before the June 30 deposition.

Defendant, in his Opposition to Plaintiff's Motion for Sanctions, maintains that he and his counsel "made every reasonable effort to deliver the documents to [Plaintiff] before the close of fact discovery and in accordance with the Court's Order requiring compliance prior to June 30, 2006." (Def.'s Mem. Opp. Mot. Sanctions 3.)  As this action is one of five separate proceedings, during the week of June 26 Defendant was both preparing for arbitration and attending and taking the depositions of two individuals in connection with this action and the Delaware

4

Chancery Court Action.[2] (Id.)  Despite these competing obligations, Defendant asserts that he was still able to collect additional documents and deliver them to his counsel, however, once received, Defendant's counsel determined that the volume and format of the documents required that the task be outsourced. (Id. at 4.)  According to Defendant, the document production professionals first attempted to deliver the documents to Plaintiff through a file transfer protocol ("FTP"), however, Plaintiff's counsel had difficulty reading the documents. (Id.)  Defendant asserts that he was then "forced to make copies of in excess of 10,000 documents," and had the documents delivered to Plaintiff "the next business day."[3]

In its Response to the Meshkin Declaration, Plaintiff asserts that the Declaration is false in that (1) Defendant has not produced all of the personal financial records that he claimed to have produced; (2) Defendant has not produced Nutzz.com QuickBooks® records; (3) Defendant has not produced all of the responsive financial records, specifically, financial documents from 2005 for certain SouthTrust Bank accounts for Nutzz.com; and (4) Defendant has not produced the settlement agreement between him and James Coffin.

III.   **DISCUSSION**

Federal Rule of Civil Procedure 37(b)(2) provides, in pertinent part, that:

---

[2]   At the initial deposition of Carl Peru, Plaintiff's former Vice President of Product Marketing, Plaintiff would not permit Defendant's counsel to ask nor the witness to answer any questions addressing the FastTrack Savings program.  In a June 8, 2006 Ruling, this Court denied Plaintiff's Motions for Protective Orders with respect to deposition questions addressing the FastTrack Savings program, finding that "information related to the FastTrack Savings Program is relevant to the claims presented and potential damages in this action" and, as a result, holding that "Defendant is entitled to question Plaintiff's employees . . . concerning details of Plaintiff's FastTrack Savings program." (June 8, 2006 Ruling at 8, Doc. No. 84.)  Defendant reconvened the deposition of Mr. Peru on June 28, 2006. (See Def.'s Mem. Opp. Mot. Sanctions 3-4.)

[3]   The Court assumes, by "next business day," that Defendant means Thursday, June 29, the day prior to his June 30 deposition.

> If a party . . . fails to obey an order to provide or permit discovery . . . , the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; . . . . In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2).  "Imposition of sanctions under Rule 37 is a drastic remedy and should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." Cuttino v. Genesis Health Ventures, Inc., No. 3:04CV575 (MRK), 2006 U.S. Dist. LEXIS 1342, at *25 (D. Conn. Jan. 11, 2006) (quotation marks and citations omitted); see also 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2291, at 714 (2d ed. 1994) (Sanctions are appropriate "for especially serious disregard of the obligations imposed by the discovery rules.").

### A.    Motion for Sanctions

Plaintiff asserts that although its Motion for Sanctions discusses the alleged tactics employed by Defendant to prevent Plaintiff from reviewing Defendant's last-minute production prior to his deposition, Plaintiff's motion is primarily based on Defendant's violation of earlier Court Orders and his allegedly false Certification of Compliance filed on June 14, 2006.

Defendant's June 14, 2006 Certification, filed in response to this Court's June 12, 2006 Order, states that he will provide Plaintiff with copies of his income tax returns for the years

6

2000 to 2005 as soon as he receives copies—either from a computer recovery specialist, who is

determining whether the files exist on an old computer, or from the Internal Revenue Service

("IRS").[4] (See Cert. of Compl. ¶ 3, June 14, 2006.)  Defendant also asserts that he "caused to be

served all financial information in [his] immediate possession, care, custody or control that relate

to the 'Bang Affiliates' from January 1, 2000 to present," including "electronic copies of all

QuickBooks® accounting files and over 3,200 pages of bank statements, balance sheets, ledger

accounts and other materials." (Id. ¶ 4.)

     Plaintiff's Motion for Sanctions, although ostensibly based on Defendant's allegedly false

Certification of Compliance, does not dispute either of the assertions in Defendant's Certification

of Compliance. In Plaintiff's Reply to Defendant's Opposition to the Motion for Sanctions and

its Response and Supplemental Response to the Meshkin Declaration, discussed in section B

below, Plaintiff alleges that Defendant has made various misrepresentations to the Court.

     1.    *Defendant and Defendant's Counsel's Conduct*

     Plaintiff's Motion for Sanctions is based primarily on Defendant and defense counsel's

conduct during discovery in this action.  Plaintiff's Motion for Sanctions is the fifth motion in a

series of related motions directed at Defendant's alleged refusal to produce responsive

documents in his possession and the possession of Melissa Colley, Nutzz.com, LLC's

bookkeeper.  The Court will briefly review the facts associated with those motions.

     Defendant first objected to Plaintiff's requests for his financial documents and those of

the Bang Affiliates and Nutzz.com on the grounds of relevance, however, the Court found that

---

[4]     Defendant submitted IRS Forms 4506 and 4506T, which ask the IRS to provide him with both a
transcript of his income tax returns and copies of the actual income tax returns for the years 2000
to 2005. (See Ex. A to Cert. of Compl., June 14, 2006.)

the documents at issue were relevant in its May 10, 2006 Ruling on Plaintiff's Motions to Compel. (See May 10, 2006 Ruling 8-10, Doc. No. 62.)  In the face of Defendant's relevance objection, Plaintiff attempted to obtain the relevant documents from Melissa Colley, however, Defendant's counsel had already retrieved the documents from her.  This Court ordered Defendant to produce the Colley documents in its May 10, 2006 Ruling, (see id. at 10), however, Defendant has since asserted that the Colley documents were merely duplicative of others already produced.  The Court next entered its June 12, 2006 Order in response to Plaintiff's Emergency Motion for Sanctions, following which Defendant filed the sworn Certification of Compliance on June 14, 2006.  Plaintiff again moved for sanctions and the Court again ordered production from Defendant on June 19, 2006.  Plaintiff now asserts that the documents produced by Defendant in response to the June 19, 2006 Order were produced in a manner that prevented Plaintiff from (1) using them at the second day of Defendant's deposition and (2) being able to inform the Court in Plaintiff's June 30, 2006 Motion for Sanctions as to the nature of Defendant's compliance with the June 19 Order. (Pl.'s Mot. Sanctions 4.)

According to Plaintiff, Defendant's refusal to produce responsive documents has forced Plaintiff to take a number of depositions—including the depositions of Ms. Colley and Defendant himself—without access to the relevant documents. (Id. at 4-6.)  Moreover, Plaintiff argues that Defendant, aware of the Court's June 30 deadline concerning sanctions and his deposition scheduled for that same day, produced the documents in paper form in order to "create a situation where [Plaintiff] cannot reasonably know what he has produced." (Id. at 6-7.)  Defendant contends that he and his counsel "made every reasonable effort to deliver the documents to [Plaintiff] before the close of fact discovery and in accordance with the Court's Order requiring

compliance prior to June 30, 2006," during a time where Defendant and his counsel were preparing for arbitration and attending and taking two depositions in related actions. (Def.'s Mem. Opp. Mot. Sanctions 3-4.)

Because this Court is unable to assess the credibility of the parties' assertions and in order to avoid becoming the referee of each dispute between the parties, the Court will not order any sanctions based solely on Defendant's conduct.  The only sanctions ordered are discussed below, in section B of this Ruling.

> 2.     *Colley Documents*

This Court's May 10, 2006 Ruling on Plaintiff's Motions to Compel ordered Defendant to produce, on or before May 12, 2006, the documents sought by Plaintiff from Melissa Colley, Nutzz.com, LLC's bookkeeper—i.e., all financial records, general ledgers, profit and loss statements, cash flow statements and balance sheets relating to Defendant and the companies. Plaintiff asserts that during Ms. Colley's deposition, she identified binders in which she kept bank statements for the Bang Affiliates along with documents related to the transactions appearing on the statements. (Colley Dep. 124:23-125:16, June 13, 2006, Ex. C to Pl.'s Mem. Supp. Mot. Sanctions.)  Plaintiff's counsel sought production of or Bates numbers for binders the following day. (See Ex. G to Pl.'s Mem. Supp. Mot. Sanctions.)  Instead of providing a response, however, Defendant's counsel initially resisted. (See id.)  On July 15, 2006, only after the instant Motion for Sanctions was filed, Defendant's counsel finally sent a letter to Plaintiff's counsel asserting that the bank statements contained in Ms. Colley's binders are "merely duplicative of the production already undertaken by Mr. Meshkin in this action," and providing the Bates numbers for the documents. (Ex. B to Def.'s Mem. Opp. Mot. Sanctions.)  Defendant similarly

asserts, in his Opposition, that the documents contained within Ms. Colley's files were duplicative of documents already produced by Defendant in this litigation. (Def.'s Mem. Opp. Mot. Sanctions 2.)  Plaintiff notes, however, that Defendant provides no proof in support of his claim that the bank statements that his lawyers took from Ms. Colley's office are merely duplicative of those already produced, and states that "[i]t seems rather odd that Meshkin's lawyers would rush to get control over the documents from Ms. Colley and then jealously guard them if they are merely duplicative of those that have already been produced."[5] (Pl.'s Reply 4-5.) Plaintiff asks the Court to infer that the documents that were possessed by Ms. Colley are new evidence that has not been produced. (Id. at 5.)

Defendant also argues that Plaintiff's Motion for Sanctions was filed in bad faith, as he and his counsel took pains to produce a large number of responsive documents before June 30. Plaintiff argues, however, that the fact that Defendant produced responsive documents *after* June 14 only adds credence to its argument that at least some of the representations made in Defendant's June 14 Certification of Compliance were false—notably, the representations regarding the QuickBooks® account for Nutzz.com and the 2005 bank statements for Nutzz.com. The Colley documents at issue—i.e., the QuickBooks® account for Nutzz.com, LLC and the Nutzz.com's 2005 bank statements—will be discussed in more detail below.

---

[5]     Defendant asserts that he "discovered that Ms. Colley had absconded with property and company documents belonging to Nutzz and Bang Racing when she quit," only after Plaintiff issued a subpoena to Ms. Colley in an effort to obtain those documents. (Def.'s Reply 5 n.6.)  Defendant's counsel reclaimed the documents from Ms. Colley prior to her deposition.  In this Court's May 10, 2006 Ruling on Plaintiff's Emergency Motion to Compel, this Court stated that "[r]egardless of the reasons why Defendant's counsel retrieved the documents from Ms. Colley, it is clear that they are now in Defendant's 'possession, custody or control' and are relevant to the claims in this lawsuit," and ordered Defendant to produce the Colley documents in their entirety prior to her deposition. (May 10, 2006 Order 10, Doc. No. 62.)

###### B.      Meshkin Declaration

The Meshkin Declaration, filed in response to this Court's June 19, 2006 Order, asserts

that: (1) Defendant has "produced . . . or otherwise identified prior document production

encompassing more than 71,000 pages of documents; (2) Plaintiff has received documents from

Melissa Colley, SouthTrust Bank, and Defendant which "encompasses the complete and total

production of documents in [Defendant's] possession, custody and control responsive to

Plaintiff's document request number 16; (3) Plaintiff has received all documents in Defendant's

possession or custody responsive to document request number 18, addressing Defendant's

personal banking and financial information; (4) Defendant has been unable to find documents

showing his involvement with surfbuzz and the sale thereof, but will try to contact others

involved with the transaction to obtain that production; (5) Plaintiff has "received documents

addressing or is otherwise aware of publicly available information concerning claims involving

[Defendant] and Travis Kvapil, George Blacker and John Adalio," which documents constitute

the "complete and total production of documents in [Defendant's] possession or custody

addressing [Plaintiff's] document request number 33; (6) the production undertaken by

Defendant thus far "encompasses the complete and total production of documents responsive to

the balance of [Plaintiff's] document requests in this action; and (7) the document production in

this action and other pending litigation between the parties addresses the relevant solvency of

Nutzz.com, LLC and Bang Racing, LLC. (Meshkin Decl.)

######      1.      *Defendant's Personal Financial Records*

Plaintiff claims that the Meshkin Declaration is false in that it claims that Defendant

produced all documents concerning his personal finances in response to Plaintiff's Request for

Production Number 18.[6]  Specifically, the Meshkin Declaration asserts that "[t]his production

encompasses the complete and total production of documents in my possession or custody

addressing [Plaintiff's] document request number 18." (Meshkin Decl. ¶ 4.)  Plaintiff asserts,

however, that at his deposition, taken the same day the Declaration was filed, Defendant admits

to the existence of two bank accounts on which he was a signatory:

> Q.    Who is the business preferred account in the name of that's referred to here?
> A.    CloverLeaf Partners.
> Q.    Who has signing rights to transfer money from it?
> A.    Myself and my mother.
> Q.    Did you give us those business preferred account statements in the latest production?
> A.    No.
> Q.    Why not?
> A.    My understanding that wasn't something that was required.
> . . . .
> Q.    Other than any bank account for any of the Bang affiliated entities, this First Charter account that we're looking at a statement of, Exhibit 445, and the business preferred account that is referenced on the first page, what bank accounts do you have signing authority for?
> A.    There's another bank account for CloverLeaf Partners that I have signing authority on.
> Q.    What is that account?
> A.    I don't know what it's called.
> Q.    Who else has signing authority for that account?
> A.    My mother.
> Q.    What account is that bank in?
> A.    First Charter.
> Q.    Did you give us the records for that second account for CloverLeaf partners?
> A.    No.

(Meshkin Dep. 454:25-455:11, 456:17-457:9, June 30, 2006.)  The documents for the two bank

---

[6]    Request No. 18 of Plaintiff's Request for Production of Documents asks Defendant to produce: "All documents constituting, concerning or referring to your financial records, including but not limited to, income statements, profit and loss statements, balance sheets, revenue data, expense data, cash flow reports, results from operations, budgets, forecasts, business plans, tax returns, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present."

accounts referenced in Defendant's deposition have not been produced.

Defendant was ordered to produce documents responsive to Plaintiff's Request Number 18 in this Court's May 10, 2006 and June 12, 2006 Orders.  Defendant's June 14 Certification claimed that he had fully complied with these orders.  In the June 19, 2006 Order, this Court found that Defendant had not fully complied with this request, and ordered him to demonstrate compliance by June 30, 2006, or else a default would enter. (June 19, 2006 Order ¶ 4, Doc. No. 93.)  The Meshkin Declaration purports to certify that Defendant has fully complied with Request Number 18.

Defendant contends that he does not own CloverLeaf Partners, and thus is not required to disclose its bank statements. (Def.'s Reply 2.)  At his deposition, Defendant testified that Morningside Capital Corporation owns CloverLeaf Partners:

> Q.    What is your affiliation, if any, with CloverLeaf Partners?
> A.    I am the president of the company.
> Q.    Who owns it?
> A.    A company called Morningside Capital Corporation.
> . . . .
> Q.    Who owns Morningside Capital Corporation?
> A.    Morningside Foundation.

(Meshkin Dep. 12:5-10, 12:20-21, June 30, 2006.)  Plaintiff has not presented any evidence that would equate Defendant's signatory rights to an actual ownership interest in the company.  As such, the records of CloverLeaf Partners do not fall within Plaintiff's Request for Production Number 18.  Because Plaintiff has not identified any other deficiencies in Defendant's response to this request, no default will enter on this issue.

### 2.    *Nutzz.com QuickBooks® records*

Plaintiff contends that the Meshkin Declaration is false inasmuch as it claims that

Plaintiff has all of the documents concerning the finances of Defendant's companies, including all QuickBooks® accounting files.  Plaintiff maintains that Defendant has not yet provided Plaintiff with the QuickBooks® accounting files or bank account records which he provided to his own expert witness. (Pl.'s Supp. Resp. at 3.)  On June 30, 2006, Defendant submitted a Memorandum in Support of his Motion for Protective Order, in which he offered the expert report of William A. Santora, CPA ("Santora"), to support the claim that Defendant did not convert Plaintiff's $1.25 million advance to his own personal finances. (See Def.'s Mem. Supp. Mot. Prot. Order 10, Doc. No. 106.)  Attached to Santora's Report is a letter from Santora to Kevin F. Berry of Cozen O'Connor, an attorney for Defendant, explaining that Santora reviewed "bank account records and other documents supplied by you [Cozen O'Connor]."  On August 15, 2006, Santora also confirmed at his deposition that he was provided copies of QuickBooks® accounting files for Nutzz.com by Defendant's counsel:

> Q.   Were you ever informed whether Nutzz.com created or maintained financial records other than the bank statements that your firm was provided to do the report identified?
> A.   Yes.
> Q.   What were you told?
> A.   We were given copies of them.
> Q.   Given copies of what?
> A.   Financial records, the Quick Books financial records.
> Q.   Who provided the Quick Books reports?
> A.   David Felice.[7]

(Santora Dep. 52:5-16, 54:12-14, Aug. 15, 2006.)  Plaintiff's attorneys have requested that Defendant produce the QuickBooks® accounting files for Nutzz.com, but no files have been produced thus far.  Similarly, Melissa Colley gave testimony suggesting that a QuickBooks®

---

[7]   David Felice is one of Defendant's attorneys at Cozen O'Connor.

account for Nutzz.com did exist:

> Q. In the QuickBooks program you set up accounts to track transactions in a number of the entities' bank accounts, correct?
> A. Yes.
> Q. Did you set one up for Nutzz.com?
> A. Yeah, I them set up for all the accounts, yes.  At least I think I did.
> . . . .
> Q. In the QuickBooks system there is an account set up to track transactions for Nutzz.com, LLC, correct?
> A. Yes.

(See Colley Dep. 128:18-24, 143:5-23, June 13, 2006, Ex. C to Pl.'s Mem. Supp. Mot.

Sanctions.)[8]  Plaintiff's counsel requested the account in two emails sent to Defendant's counsel

following the Colley deposition, (see Ex. D to Pl.'s Mem. Supp. Mot. Sanctions,) but asserts that

Defendant's counsel did not respond to his emails.

Finally, the testimony of Defendant himself also strongly suggests that the documents do

exist.  At his deposition, Meshkin confirmed the existence of QuickBooks® files for Nutzz.com:

> Q. Was Melissa Colley keeping Nutzz.com financial information on QuickBooks?
> A. I believe she was.
> Q. Right up until the time she left?
> A. I believe she was.

(Meshkin Dep. 348:12-16, June 30, 2006, Ex. A to Pl.'s Reply.)

Defendant has not yet produced the QuickBooks® account for Nutzz.com.  In

Defendant's August 1, 2006 Reply to Plaintiff's Response to the Meshkin Declaration,

Defendant states that "there was and still is a question as to whether Melissa Colley . . . ever

---

[8] Plaintiff asserts that after Ms. Colley's deposition, Plaintiff's counsel attempted to confirm with her that Nutzz.com did maintain its records on QuickBooks®. (Pl.'s Mem. Supp. Mot. Sanctions 4-5 n.3.)  She was unable to state with certainty that this was the case, although her deposition testimony strongly suggests that such a file exists.  Defendant asserts that her testimony "failed to conclusively demonstrate that Nutzz maintained its records using a QuickBooks® account." (Def.'s Mem. Opp. Mot. Sanctions 6.)

created a QuickBooks® file for Nutzz in the first instance," asserting that "[t]he fact remains that Defendant does not have a QuickBooks® file for Nutzz." (Def.'s Reply 4.)  Similarly, in his Opposition to Plaintiff's Motion for Sanctions, Defendant states that "Meshkin has no documents for a QuickBooks® account for Nutzz.com, thereby suggesting that no such account ever existed." (Def.'s Mem. Opp. Mot. Sanctions 2.)  The combined deposition testimony of Santora, Ms. Colley, and Meshkin himself contradicts these assertions.

Plaintiff has created a record which refutes Defendant's contention that a QuickBooks® account for Nutzz.com does not exist.[9]  On the basis of the record established, it is more likely than not that such an account was in fact opened, and therefore, Defendant shall produce the Nutzz.com QuickBooks® account to Plaintiff on or before September 27, 2006, absent which Plaintiff may claim an adverse inference based on the failure to produce such a record.[10]

3.    *Nutzz.com Financial Documents from 2005*

Plaintiff also contends that the Meshkin Declaration's assertion that Defendant has produced all responsive documents addressing the solvency of Nutzz.com is false.[11]  The Court

---

[9]     In Plaintiff's Response to the Meshkin Declaration, filed July 21, 2006, Plaintiff creates a record—based on the deposition testimony of Ms. Colley and Defendant—indicating that Defendant failed to fully comply with this Court's orders.  The Court's June 19, 2006 Order, however, required this record to be filed on or before June 30, 2006.  Plaintiff notes that although the Colley deposition was held on June 13, 2006, Defendant's deposition was not held until June 30, 2006, making it impossible for Plaintiff to produce by June 30, 2006 Defendant's admissions that a Nutzz.com QuickBooks® file exists.  Plaintiff's June 30 Motion for Sanctions discussed Ms. Colley's deposition testimony, and asserted that her testimony "strongly suggests" that a Nutzz.com QuickBooks® file exits. (Pl.'s Mem. Supp. Mot. Sanctions 4 n.3.)

[10]    Because Plaintiff did not "create[] a record which *unquestionably* refute[d] defendant's full compliance, by an independent source," on or before June 30, 2006, as required by this Court's June 19 Order, a default on this issue will not enter at this time.

[11]    The Meshkin Declaration claims that "[t]he document production in this action and pending litigation between the parties addresses the relevant solvency of Nutzz.com, LLC and Bang Racing, LLC.  First, Vertrue possesses the aforementioned documents described in paragraph 3 addressing the finances of Nutzz.com, LLC as well as Bang Racing, LLC.  Second, Vertrue

already ordered default to enter against Defendant based on his failure to produce responses to

Document Request Number 16,[12] which sought financial information for Nutzz.com, in its June

19, 2006 Order.  According to Plaintiff, Defendant has failed to produce financial documents

from 2005 for certain SouthTrust Bank accounts for Nutzz.com.  Because Plaintiff found two

account statements for SouthTrust Bank accounts in Defendant's name, both dated June 2005, in

Defendant's most recent production of documents, and because Defendant has repeatedly

asserted that Nutzz.com continued to operate in 2005, (see Meshkin Dep. 387:21-388:11, 517:2-

24, June 30, 2006), Plaintiff infers that Nutzz.com bank statements for 2005 must exist, asserting

that it "is simply inconceivable that a functioning business does not maintain bank statements."

(Pl.'s Resp. 8.)

   Defendant's Declaration also asserts that Defendant has provided Plaintiff with all the

bank account statements for Nutzz.com and the other Bang Affiliates. (Meshkin Decl. ¶ 3.)

Defendant has not, however, produced to Plaintiff bank account statements for Nutzz.com for

---

initiated litigation in the Delaware Court of Chancery attempting to have a receiver appointed for
both Nutzz.com, LLC and Bang Racing, LLC based on allegations of insolvency.  The Delaware
Court of Chancery has yet to rule on the Companies' motion to dismiss, but looked with great
disfavor on Vertrue's position, presumably given the contingent nature of Vertrue's claim for
repayment of the advance paid to Nutzz.com, LLC.  Finally, I have produced indisputable
documentary evidence and an uncontroverted expert report in this action demonstrating the
allocation of Vertrue's advance payment to Nutzz.com, LLC.  Vertrue failed to produce any expert
report of its own concerning this information (which was made available to Vertrue in March
2006) and cannot in good faith contest the factual information contained in the documentary
evidence and expert report." (Meshkin Decl. ¶ 7.)

[12]   Request No. 16 of Plaintiff's Request for Production of Documents asks Defendant to produce:
"All documents constituting, concerning or referring to the financial records of Nutzz, including,
but not limited to, income statements, profit and loss statements, balance sheets, revenue data,
expense data, cash flow reports, results from operations, budgets, forecasts, business plans, or any
other documents reflecting financial status, assets, liabilities, income, cash flow, or results from
operations from January 1, 2000 to the present."

2005.[13]  Defendant contends, in his Memorandum in Opposition to Plaintiff's Motion for

Sanctions, that he produced all responsive bank statements in March 2006,[14] (Def.'s Mem. Opp.

Mot. Sanctions 6), and in his Reply in Support of the Meshkin Declaration, that he "produced all

the bank statements he possessed and all the bank statements Ms. Colley possessed." (Def.'s

Reply 5.)

Santora's deposition testimony, however, indicates that Defendant, or his counsel, had

bank account statements for Nutzz.com for 2005 in his possession or control, and provided them

to Santora for use in preparing his expert report:

> Q.    What bank account records were you provided after completing your report?
> A.    I think another three or four months worth, January till May [2005] or
>        something like that.  Maybe four—maybe four or five months worth.
> Q.    Of the same bank accounts?
> A.    Yes.

(Santora Dep. 47:13-23.)

The Court's June 19 Order placed the onus on Defendant to demonstrate that all existing

records were produced, ordering that default shall enter for Defendant's failure to comply with

Plaintiff's Request for Production Number 16.  Defendant has not shown that all relevant records

were produced.  Alternatively, Plaintiff has produced evidence that indicates that Defendant has

failed to produce at least some responsive records, namely, bank account records for 2005 for

---

[13]    Defendant contends that Plaintiff contacted SouthTrust Bank directly on June 20, 2006, despite the
fact that there was a Motion for a Protective Order pending, and instructed the bank to produce
certain documents. (Def.'s Reply 5.)  Defendant asserts that on July 7, 2006, SouthTrust produced
bank statements for a number of different entities, including Nutzz.com. (Id.)  Plaintiff did not
apprise the Court of this fact in its Response to the Meshkin Declaration, two weeks after obtaining
the SouthTrust bank statements.

[14]    Defendant cites to a letter from its counsel to Plaintiff's counsel in which defense counsel states
that "[t]he bank records were forwarded to [Plaintiff] in March 2006." (Ex. A to Def.'s Mem. Opp.
Mot. Sanctions.)

18

Nutzz.com.  Therefore, with regard to the Nutzz.com bank account records for 2005, because Defendant has failed to demonstrate that these records do not exist, in the face of evidence that such records do exist, it will be inferred that such records exist, and an adverse inference with regard to those records will be thereby be drawn against Defendant.  Plaintiff will be left to argue as to the inference that shall be drawn.

            4.    *Settlement Agreements*

Plaintiff contends that paragraph 5 of the Meshkin Declaration is false in that it misrepresents that Defendant produced all settlement agreements requested in Plaintiff's Request for Production Number 33.[15]  Plaintiff asserts that James L. Coffin, a vice president of Bang Racing, LLC, filed suit against Defendant and the various Bang Racing entities in October 2004, claiming violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and making various other common law claims for unpaid wages. (See Compl., <u>Coffin v. Meshkin, et al.</u>, Ex. D to Pl.'s Response to Meshkin Decl.)  The action was settled in March 2006. (See Ex. E to Pl.'s Response to Meshkin Decl.)  Plaintiff asserts that Defendant has failed to produce a copy of the settlement agreement entered into in connection with the conclusion of that action. (Pl.'s Resp. 9.)  Defendant, in response, asserts that the Coffin settlement agreement has not been produced because although the parties have reached an agreement "in principle," they have not yet memorialized their agreement in writing. (Def.'s Reply 6.)  The settlement order in the Coffin case, however, was entered on March 7, 2006, and provides that the parties have thirty days to

---

[15]    Request No. 33 of Plaintiff's Request for Production of Documents asks Defendant to produce: "All documents constituting, concerning, or referring to any agreement settling, releasing, waiving, or otherwise addressing any claim or demand (whether asserted formally in a lawsuit or arbitration, or only informally in a communication) by or against you, Nutzz, or any of the Bang Affiliates."

reopen the action if the settlement is not consummated, and that after thirty days, the action shall be dismissed with prejudice. (See Ex. E to Def.'s Reply.)  The fact that the action was not reopened within thirty days indicates that the settlement has been consummated.

Because Plaintiff did not request the terms and conditions of such an agreement, but requested the agreement itself, Defendant is not under an obligation to produce anything unless a written agreement exists.  If no such document was created, then Defendant need not produce anything more, however, Plaintiff may argue that an adverse inference should be drawn on the basis of Defendant's nonproduction of an agreement which the evidence suggests exists.

Plaintiff also contends that new evidence indicates that Defendant failed to disclose the existence of or produce a copy of the settlement agreement between him and George F. Blacker. (Pl.'s Supp. Resp. 2.)  After filing its Response to the Meshkin Declaration, Plaintiff began deposing Mr. Blacker on August 11, 2006 in connection with a related arbitration proceeding.[16] Mr. Blacker, a former investor in Bang Holdings Company who parted ways with Defendant due to a dispute over ownership and employment issues, testified that he and Defendant entered into a written settlement agreement in or around late summer or early fall 2005, and that he sent a signed copy of the agreement to Defendant shortly thereafter. (See Blacker Dep. 5:8-6:14; 8:15-19, Aug. 11, 2006.)[17]  The Meshkin Declaration states that "Vertrue received documents addressing or is otherwise aware of publicly available information concerning claims involving

---

[16]     The deposition was conducted telephonically, as Mr. Blacker was out of the country.  Plaintiff's counsel was forced to suspend the deposition because Mr. Blacker was unable to print certain deposition exhibits that had been emailed to him in advance, however, Plaintiff's counsel will finish the deposition on or before September 19, 2006.

[17]     At his deposition, Blacker testified: "I think I either faxed or mailed a signed copy [of the settlement agreement] to, I believe it was Alex [Meshkin]." (Blacker Dep. 8:15-19.)

myself and Travis Kvapil, George Blacker, and John Adalio," (Meshkin Decl. ¶ 5), however, Plaintiff has not yet received a copy of the agreement between Defendant and Mr. Blacker from Defendant.[18]

The Court's June 19 Order placed the onus on Defendant to demonstrate that all existing "documents pertaining to claims involving defendant and Travis Kvapil, George Blacker and John Adalio" were produced, and ordered that default shall enter for Defendant's failure to comply with Plaintiff's Request for Production Number 33. Defendant has not shown that all relevant records were produced. Alternatively, Plaintiff has produced evidence that indicates that Defendant has failed to produce at least some responsive records, namely, his written settlement agreement with George Blacker. Therefore, with regard to the Blacker settlement agreement, because Defendant has failed to demonstrate that this document does not exist, in the face of evidence that this document does exist, it will be inferred that such a document exists, and an adverse inference with regard to that document will be thereby be drawn against Defendant. Plaintiff will be left to argue as to the inference that shall be drawn.

## IV.   CONCLUSION

For the foregoing reasons and under the terms set forth above, Plaintiff's Motion for Monetary Sanctions and Record of Defendant's Incomplete Compliance with the Court's June 12, 2006 Order [Doc. No. 102] is **granted in part**.

---

[18]    On September 1, 2006, Plaintiff filed an Emergency Motion for Leave to Issue Deposition Subpoena *Duces Tecum* to George F. Blacker, seeking leave to issue a subpoena to Mr. Blacker after the expiration of the discovery deadline in order to obtain a copy of the settlement agreement between Defendant and Mr. Blacker and testimony from Mr. Blacker concerning the terms and circumstances of that agreement, the dispute it settled, and any other information Mr. Blacker may have that is relevant to Plaintiff's claims in this action. Plaintiff's motion was granted on September 5, 2006.

SO ORDERED.

Dated at New Haven, Connecticut, September  12 , 2006.

_____/s/_____
Peter C. Dorsey, U.S. District Judge
District of Connecticut