# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| VERTRUE INCORPORATED, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:05cv1809 (PCD) |
| | : | |
| ALEXANDER B. MESHKIN, | : | |
| Defendant. | : | |

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Defendant moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on all claims in Plaintiff's Complaint. In response, Plaintiff filed a cross-motion for summary judgment on Count One (piercing the corporate veil / alter ego liability) and for partial summary judgment on Count II (fraud) of its Complaint. For the reasons set forth herein, Defendant's Motion for Summary Judgment [Doc. No. 151] is **granted** and Plaintiff's Cross-Motion for Partial Summary Judgment [Doc. No. 156] is **denied**.

## I. STANDARD OF REVIEW

Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A material fact is one which "might affect the outcome of the suit under the governing law" and an issue is genuine when "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The moving party bears the burden of establishing that summary judgment is appropriate. Anderson, 477 U.S. at 255. When moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant can satisfy its burden of establishing that there is no genuine issue of material fact in dispute by pointing to an absence of evidence to support an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." The nonmoving party, in order to defeat summary judgment, must then come forward with "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. In making this determination, the court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d

Cir. 1995) (citations omitted). A party opposing summary judgment, however, "may not rest upon the mere allegations or denials of the adverse party's pleading." FED. R. CIV. P. 56(e).

Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

## II. DISCUSSION

This case, originally filed in the Connecticut Superior Court and removed to this Court on the basis of diversity of the parties' citizenship, arose from an agreement which, from Plaintiff's view, went sour and from Defendant's point of view, simply did not fly. After an antagonistic period of discovery the parties have each moved for summary judgment. A multiplicity of questions of fact and the absence of a showing by Plaintiff of entitlement to judgment as a matter of law dictates that its motion should be denied. Defendant is entitled to judgment as a matter of law on the basis of res judicata and collateral estoppel, arising from an award in an arbitration between Plaintiff and Defendant's principal, Nutzz.com, LLC ("Nutzz"), which determined Plaintiff's claims based on Defendant's conduct as alleged in this case.

Originally in the name MemberWorks, Incorporated, and later changed, Vertrue agreed with Nutzz to form an alliance to create a membership organization to include persons who received undefined benefits intended to appeal to afficianados of vehicle racing. Lurking on the sidelines, or in the background as Nutzz' guarantore, was Bang Racing, LLC ("Bang Racing"), allegedly Nutzz' parent. Defendant Meshkin allegedly was Chief Executive Officer, principal shareholder and owner of both entities. Meshkin's machinations allegedly induced Plaintiff to enter into the Agreement, to continue to incur interim expenses in the pursuit of the undertaking, and to have refrained from seeking return of $1,250,000 advanced to Nutzz to finance advertising and promotion. In Count One of its Complaint, Plaintiff seeks to pierce the corporate veil of Nutzz in an effort to reach Meshkin individually. Its motion for summary judgment also seeks judgment under Count Two, which alleges Meshkin's fraud in inducing Plaintiff to join the agreement, thereafter representing Nutzz' continuing viability, thus inducing Plaintiff to incur expense furthering the project and to refrain from seeking return of its advance until Nutzz' insolvency precluded same. Meshkin allegedly misrepresented his and the two LLC's financial stability and capacity to create and promote the Elite Fan Membership Club to induce Plaintiff to join and to continue participating in the enterprise.

Plaintiff's motion asserts that there is no question of fact as to its claims of Meshkin's fraud and misrepresentations or omissions, which are summarized as follows:

(1) Pre-agreement, Meshkin portrayed himself as a successful entrepreneur, citing his role in the development and sale of Surfbuzz.com, a portrayal that was later retracted.

(2) Meshkin failed to disclose the withdrawal of Larry McReynolds from the LLCs,

causing a significant dilution of access to news media.[1]

(3) Meshkin allegedly overstated Nutzz' capacity for software generation necessary to Internet access and marketing; after-the-fact it was determined that staff with that capacity did not exist.

(4) Meshkin allegedly failed to disclose the employment abandonment by Bang Racing's driver, for non-payment of compensation, thus eliminating the team's racing capacity and its exposure at tracks of the club's name and existence.

(5) Meshkin allegedly failed to disclose Bang Racing's loss of sponsorship by Toyota and Line-X and the resulting loss of income and financial viability.

(6) Meshkin allegedly failed to disclose the fact that Bang Racing ultimately ceased to function and was evicted from its headquarters for non-payment of rent in January, 2005.

(7) Meshkin allegedly failed to disclose Bang Racing's transfer of all its assets, thus terminating its capacity to perform its trackside marketing functions.

(8) Nutzz was said to have access, for the purpose of marketing program memberships, to over one billion eBay advertising slots which were never produced.

Conclusorily Plaintiff additionally asserts, in non-specific terms, Meshkin's claim of Nutzz' and Bang Racing's marketing capabilities and failure to disclose their dire financial status. Plaintiff also asserts non-compliance by Nutzz and Bang Racing with various agreement

---

[1] McReynolds is a well-known figure in NASCAR® and a Fox Television Announcer; his involvement in the membership program was intended to provide credibility and additional revenue opportunities.

obligations. For the purpose of assessing the existence of evidence demonstrating controverted issues of fact, relevant to the claims of fraud in Count Two, these claims will put aside.

Meshkin's responses to the claims (set forth here in numbers corresponding to Plaintiff's claims, above) are not models of direct, clear confrontation:

(1) Those representing Plaintiff have no recollection of Meshkin's SurfBuzz dealings nor his personal finances being discussed, as Meshkin was not looked upon as a guarantor of the Agreement.

(2) McReynolds' parting company with Meshkin was publicized in the media and was the subject of a press release by Bang Racing prior to execution of the agreement. He asserts that there was no legal obligation on his part to disclose such to Plaintiff.

(3) Meshkin cites evidence that software developers in India worked for Nutzz, of which employees of plaintiff were aware.

(4) Meshkin did not respond to this claim.

(5) Plaintiff knew of the loss of the Toyota sponsorship in January, 2005, though not from Meshkin. This was only a few weeks before plaintiff terminated the agreement and six months after it was executed. Meshkin claims he advised plaintiff as to Line-X immediately after Bang Racing learned there was no sponsorship for 2005. An employee of Plaintiff apparently knew there was no Line-X sponsorship but it is not evident when that was known. Further, Plaintiff was never provided with an executed sponsorship agreement but only an announcement by Meshkin of an anticipated sponsorship.

(6) Meshkin claims there was no obligation on his part to inform plaintiff of Bang Racing's financial stress.

(7) Meshkin claims to have raced a truck in 2005. He also notes that Plaintiff's awareness of Bang Racing's dissolution came from a settlement in which Bang received $176,000. He also claims there is no basis for an obligation for such a disclosure. Conclusorily, Meshkin contends that Nutzz anticipated that revenue from memberships would fund its Agreement obligations. He provides no explanation for how that contention was sustainable.

The record created by Plaintiff's claims and Defendant's responses demonstrate that there are questions of fact as to Plaintiff's claims of fraud. Meshkin was not a guarantor of Nutzz's performance of the agreement. His personal financial posture would not be a basis for fraud in the inducement, for, if credited, his personal finances were not considered nor were they material to plaintiff's expectations for the program contemplated. Further, as found by the arbitrators, Plaintiff was hardly aggressive in learning who it was dealing with and assuring the reasonable likelihood that the program would be successful, thereby neglecting to perform the necessary due diligence. There is no uncontroverted evidence which would sustain Plaintiff's claim and its burden of demonstrating the absence of questions of fact as to its claims of fraud in inducing it to enter the agreement with Nutzz.com. In addition, during the life of the agreement there is no uncontroverted evidence that Meshkin acted as to induce Plaintiff's continued participation in the Nutzz Elite membership program. The performance obligation under the agreement was solely Nutzz', not Meshkin's. While he acted for Nutzz, the fraud is alleged in omissions; namely

Meshkin's failure to inform Plaintiff of occurrences pertaining to Nutzz and Bang Racing as to which, but two, Meshkin has asserted facts which would remove the taint of fraud. The claims to which the response was that there was no obligation to disclose and the one not responded to present factual questions by their nature and context, including materiality.

Meshkin raises in his brief the argument that arbitration between Plaintiff and Nutzz forecloses Plaintiff's claims on the ground of res judicata and collateral estoppel. Plaintiff does not contest the applicable controlling principles of law in these respects. Res judicata bars the reassertion of claims actually made or which might have been made on the operative set of facts presented to the first forum. Fayer v. Town of Middlebury, 258 F.3d 117, 124 (2d Cir. 2001) (citing Coery v. Avco-Lycoming Div., 163 Conn. 309, 307 A.2d 155, 160 (1972)). Res Judicata bars a subsequent action between the same parties or those in privity with them upon the same claim. Dowling v. Finley Associates, Inc., 248 Conn. 364, 373, 727 A.2d 245, 1250 (2001.) Collateral estoppel precludes relitigation of issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them. Id.

Plaintiff in response solely argues that it did not have a fair opportunity to litigate claims of fraud that are here asserted. Defendant's Answering Memorandum, dated November 6, 2006, asserts that in the arbirtration as here, Plaintiff alleged Meshkin's misconduct as the basis for its claims against Nutzz. (See Def.'s Ans. Mem. 8-9.) Plaintiff asserts its entitlement to hold Meshkin liable to repay the advance, pierce Nutzz' and Bang Racing's corporate veils, and contends that its fraud and CUTPA claims are not precluded notwithstanding the arbitration award. Meshkin's alleged misconduct is the core of the factual basis for the claims asserted in arbitration as well as here. Plainitff does not dispute that the claims it asserted in arbitration are

8

as cited by Defendant and therefor is deemed to have accepted the description of the claims made and there decided.

The parties appear to have accepted Meshkin as acting throughout on behalf of Nutzz, which was therefor bound by his conduct, including any wrongdoing if such were the case. Plaintiff makes two claims based on Meshkin's failure to comply with disclosure requests. The first is affirmative in nature, i.e., the existence of proof of Meshkin's fraud. There are several requests that Meshkin is claimed to have to have failed to provide material in response. He was ordered to do so, absent which, as to the documents in question, adverse inferences could be drawn against Meshkin. Despite a court invitation to Plaintiff that as to documents nonetheless not provided, on an independent showing that Plaintiff's claim of non-compliance was well-founded, further relief under Rule 37 would be possible, no such showing was provided. Further, Plaintiff claims as facts matters which it asserts would be shown by the documents. The order precluded Meshkin from making arguments based on the documents but it did not decide any of their factual content. The court cannot now find, as Plaintiff argues, facts on the basis of contents of documents not a matter of record. Plaintiff's argument that its claims of fraud can be substantiated by the contents of documents Meshkin failed to produce, despite court orders, is without merit.

The second argument Plaintiff makes with respect to the arbitration is procedural, i.e., that it was deprived of a fair opportunity to litigate Meshkin's fraud in the arbitration because of his non-compliance with the requested, and court-ordered, discovery. The arbitration award makes no mention of any claim being advanced in arbitration of Plaintiff seeking to rectify Meshkin's non-disclosure. The finding there was simply that Plaintiff failed to present evidence

to prove either its claim of fraud in the inducement or post-agreement fraud. Plaintiff has not shown that it requested a continuance to permit resort to this court, and Rule 37, to obtain the material or to sanction Meshkin, and in turn Nutzz, by precluding its defense of the fraud claim. Plaintiff cannot claim foreclosure of an opportunity to litigate fraud claims absent evidence by which it might have done so when it failed to utilize available methods by which it was able to obtain the evidence it claims to have been denied.

The arbitration award, Ex. S to Defendant's Answering Memorandum, heard and decided Plaintiff's claims against Nutzz, asserted as a counterclaim. The claims asserted included fraud, conduct during the pendency of the agreement and in response to the claim for return of the $1,250,000 advance. The conduct Plaintiff attributed to Nutzz was the conduct of defendant Meshkin acting for and on behalf of Nutzz, as it alleges in this case as the basis for all its claims. The panel rejected the counterclaims, finding that Plaintiff failed to carry its burden of proof. (See Arbitration Award 4.) Plaintiff briefs no argument as to the award but contests application of res judicata and/or collateral estoppel solely on the basis of not having had a fair opportunity to litigate its claims in the arbitration. As noted above, Plaintiff's claim is without merit.

## III.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. No. 151] is **granted** and Plaintiff's Cross-Motion for Partial Summary Judgment [Doc. No. 156] is **denied** on the ground that Plaintiff's claims are barred by res judicata and collateral estoppel. The clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, March  1 , 2007.

                                                /s/
                       Peter C. Dorsey, U.S. District Judge
                           United States District Court